**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BEN'NETT J. TORRENCE<br>PO BOX 726<br>Franklinville, NJ 08322<br><br>　　　　　Plaintiff,<br>　　v.<br><br>EGG HARBOR CARE AND<br>REHABILITATION CENTER, LLC, d/b/a<br>EXCEL CARE AT EGG HARBOR<br>6818 Delilah Road<br>Egg Harbor Township, NJ 08234<br>　　　　　and<br>EXCEL CARE MANAGEMENT, INC.,<br>d/b/a EXCEL CARE HEALTH<br>MANAGEMENT<br>P.O. Box 833<br>Lakewood, NJ 08701<br>　　　　　and<br>NANCI VEKIOS, *individually*<br>6818 Delilah Road<br>Egg Harbor Township, NJ 08234<br>　　　　　and<br>STEFANIA BRESCIA<br>6818 Delilah Road<br>Egg Harbor Township, NJ 08234<br><br>　　　　　Defendants. | CIVIL ACTION<br><br>No.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, Ben'Nett J. Torrence (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I.　Introduction

1.　Plaintiff has initiated this action to redress violations by Defendants of 42 U.S.C. § 1981 and the New Jersey Law against Discrimination ("NJ LAD" - N.J.S.A. §§ *10:5-1, et.*

*seq.*). Plaintiff was unlawfully terminated by Defendants, and she suffered damages more fully described/sought herein.

## II. Jurisdiction and Venue

2. This Court may properly maintain jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co v. State of Washington, 326 U.S. 310 (1945) and its progeny.

3. This action is initiated pursuant to a federal law. The United States District Court for the District of New Jersey has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III. Parties

5. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

6. Plaintiff is an adult who resides at the above-captioned address.

7. Egg Harbor Care and Rehabilitation Center, LLC, d/b/a Excel Care at Egg Harbor (hereinafter "Defendant Rehab" if referred to individually) is (licensed as) a 120-bed skilled nursing and rehabilitation facility.

8. Excel Care Management, Inc., d/b/a Excel Care Health Management (hereinafter "Defendant ECM" where referred to individually) is the management company operating Defendant Rehab and facilities operating as Excel Care at Dover, Excel Care at Pines, Excel Care at Wayne, and Excel Care at Manalapan. This entity operates Defendant Rehab and other facilities, sets their policies, and oversees employees and operations.

9. Defendants Rehab and ECM are properly single, joint and/or integrated employers for all purposes in this lawsuit.

10. Nanci Vekios ("Defendant Vekios" where referred to individually) is the Vice President of Strategic Development of Defendant ECM who oversees and manages operations within Defendant Rehab.

11. Stefania Brescia ("Defendant Brescia" where referred to individually) is the Regional Director of Admissions, employed by Defendant ECM, and who oversees operations within Defendant Rehab.

12. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

### IV.    Factual Background

13. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

14. Plaintiff was (officially) hired by Defendants Rehab and ECM effective on or about January 2, 2023 (commencing work on or about January 3, 2023).

15. Plaintiff was hired by Defendants Rehab and ECM to work as their Director of Admissions within their Egg Harbor nursing facility (in New Jersey). At all relevant times, Plaintiff had been hired as a Director Admissions.

16. Plaintiff had been interviewed and hired by Evan Gold (Administrator) and Defendant Brescia (Regional Director). Defendant Vekios (Vice President) was not part of Plaintiff's interview or hiring process.

17. Plaintiff is a black (African-American) female. Defendants Brescia and Vekios are both Caucasian (and not African American).

18. In total, Plaintiff was only employed for approximately 5 weeks until abruptly being terminated without notice or warning(s). Plaintiff had worked full time and had averaged at least 50 hours per week during her short tenure.

19. Prior to a discriminatory incident shortly before her termination (explained *infra*), Plaintiff was praised verbally <u>and</u> in text communications complimenting her on her job performance. Shortly before Plaintiff's termination, Plaintiff experienced a discriminatory incident. Plaintiff complained of racial discrimination, and she was promptly terminated.

20. During Plaintiff's last approximate 2 weeks of employment, Defendant Vekios made a visit to Plaintiff's work location. During this visit, the following occurred:

   a) Defendant Vekios appeared at Plaintiff's office;

   b) Plaintiff and Defendant Brescia were present when Defendant Vekios appeared at Plaintiff's office;

   c) Defendant Vekios observed that Plaintiff was a black female, and without any prior introduction or meeting with her, told Plaintiff to: (a) stand up; (b) show

    Plaintiff's teeth; (c) smile; and (e) let Defendant Vekios evaluate if Plaintiff is a "good fit."

  d) Plaintiff in shock and feeling humiliated, turned to Defendant Brescia hoping Defendant Brescia would intervene. Instead, Defendant Brescia verbally encouraged Plaintiff to stand up, show her teeth, and smile at Defendant Vekios (telling Plaintiff, just stand up and show your teeth).

  e) Defendant Vekios had asked Plaintiff no less than 3 times to stand up and show her teeth despite observing Plaintiff's obvious discomfort.

  f) Plaintiff stood up and smiled. Defendant Vekios commented that Plaintiff had some nice white teeth.

  g) Plaintiff excused herself, said she had to use the bathroom, and while in the bathroom, wiped away tears from her eyes. Plaintiff used the bathroom break to regain her composure.

21. The allegations set forth in paragraph 20 (a) – (g) are what is referred to in this Complaint as the "discriminatory incident."

22. It was very common in times of slavery that a potential slave buyer would either demand to see a slave's teeth or pull their mouths open to see their teeth (or gums). This was a typical experience of slaves being sold to evaluate their health and quality as a commodity. This was in fact a standard practice humiliating slaves. This is all Plaintiff could think of when she was undergoing the absolutely humiliating experience and discriminatory incident.

23. Conversely, there was no business justification or need for telling a white-collar business professional (working as a Director) to stand up and show their teeth.

24. Plaintiff complained to Defendants' human resources management about the discriminatory incident. The individual from human resources to whom Plaintiff complained was Francis Maldonado (Director of Human Resources). Maldonado agreed with Plaintiff that what happened sounded like it was racist. Plaintiff was informed by Defendants' human resources that the issue would be discussed with Defendant Vekios.

25. Plaintiff separately complained to Defendant Brescia on at least 2 occasions that she felt racially humiliated and that she could not believe the discriminatory incident was anything other than blatant racial discrimination. She further shared that the matter had been brought to the attention of human resources.

26. Plaintiff very emotional about what had transpired and wanted a response of what action would be taken, as she was very concerned about how humiliated she had been. Prior to Plaintiff's termination, she was not informed of any investigation, any action(s), or any response to her concerns of racial discrimination (by anyone, <u>including human resources</u>).

27. In exceedingly close proximity to Plaintiff's complaints of racial discrimination to <u>both</u> human resources (who assured the matter would be addressed with Defendant Vekios) and to Defendant Brescia, Plaintiff was terminated from her job.

28. On or about February 6, 2023, Plaintiff was approached by Defendant Brescia. Defendant Brescia told Plaintiff she is being let go because the company determined she is "not a good fit." Plaintiff asked Defendant Brescia if this was about her making what happened into an HR issue (related to the discriminatory incident). Defendant Brescia then told Plaintiff "all I am allowed to tell you is you are not a good fit" and reiterated that Plaintiff was terminated, effective immediately.

29. Plaintiff had experienced an extremely degrading discriminatory incident which still continues to make her very emotional and cry, and this was compounded by her transparently (unlawful) retaliatory termination from employment.

30. In addition to the foregoing, Defendant Vekios had selectively not issued Plaintiff a bonus payment (as management receives monthly incentives). Defendant Vekios paid the

bonus to other management in January of 2023 (but not Plaintiff). And Defendant Vekios had also singled out Plaintiff for an office inspection.

31.     Plaintiff was terminated discriminatorily and retaliatorily, in violation of state and federal laws.

32.     Defendants' actions at the highest levels of corporate management (and with the acquiescence of either a non-existent in-title-only human resources or a rubber-stamping human resource department) warrant punitive damages to punish Defendants for actions that shock the conscious of any reasonable person (in addition to all other remedies available).

### Count I
### Violations of 42 U.S.C. § 1981
### (Discrimination and Retaliation)
### - Against All Defendants -

33.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34.     Plaintiff was subjected to an incident creating a hostile work environment at the end of her employment, was denied a bonus, was denied an investigation or response to complaints of discrimination, and was terminated.

35.     Defendants' actions as aforesaid constitute unlawful discrimination and retaliation in violation of 42 U.S.C. § 1981.

### Count II
### Violations of the New Jersey Law Against Discrimination ("NJ LAD")
### (Discrimination and Retaliation)
### - Against All Defendants -

36.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff was subjected to an incident creating a hostile work environment at the end of her employment, was denied a bonus, was denied an investigation or response to complaints of discrimination, and was terminated.

38. Defendants' actions as aforesaid constitute unlawful discrimination and retaliation in violation of the New Jersey LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation and discrimination at the hands of Defendants until the date of verdict;

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

  E. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the (potential) caps on certain damages set forth in applicable federal law; and

  F. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: March 6, 2023

9